First case on the oral argument calendar is Eskilian v. Bondi. May it please the court. My name is Armina Ibrahimian. I represent petitioner Susie Eskilian. Ms. Eskilian entered the United States as a lawful permanent resident at the age of one in January of 1978 after fleeing the USSR with her family. She has not departed the United States ever since. She's a homeowner, a taxpayer, the wife of a U.S. citizen, the mother of two U.S. citizen children, and a medical drugging counselor who has dedicated her career to helping Americans overcome addiction. Ms. Eskilian is also stateless. No country recognizes her as a national or a citizen. The sole conviction that rendered her removable from the United States has now been vacated due to a constitutional defect and dismissed. The record demonstrates that Ms. Eskilian acted with due diligence to seek vacature of her conviction. In June of 2018, Immigration Customs Enforcement, ICE, informed her for the first time that Arminia would accept her removal, making the risk of removal imminent. She immediately sought legal assistance. By October of 2018, she learned that there was a constitutional defect in her conviction. A motion to vacate was filed and granted under California Penal Code Section 1473.7. By July of 2019, I filed a motion to reopen with the Immigration Court based on this new evidence. The immigration judge denied the motion finding a lack of due diligence in seeking vacature of her conviction. I took full responsibility for not addressing due diligence in the first motion, and within weeks, I filed the second motion, this time addressing due diligence in great detail. The immigration judge denied the second motion as numerically barred and the board infirmed. Under Bent v. Garland, due diligence is measured from when a petitioner is put on notice that something is essentially wrong, not from the date of the conviction or the date that the statute was enacted. Ms. Eskilian acted promptly and reasonably at every stage. The equities in this case are extraordinary. Ms. Eskilian has lived in the United States for five decades. She is a valued member of our community, and the only basis for her removal has been vacated. Moreover, recent changes in the law and policy make the risk of removal imminent, even the risk of removal to a third country, increasing the prejudices she faces. The record is clear. There is no collusion, and all requirements for reopening have been met. The interest of justice strongly favors Ms. Eskilian. We respectfully ask this Honorable Court to grant her petition for review and remand to the Immigration Court to reopen and terminate proceedings. Thank you. All right. You want to reserve the rest of your time for rebuttal. All right. Thank you. Good morning, Your Honors. May it please the Court. This case is very simple. At its core is whether petitioner established due diligence from January 1st, 2017, when 1473.7 became enacted, and whether she did anything from that time until June 20th of 2018 when she learned about the possibility of removal. I think Judge Gould has a question. Counsel, if I can interject on the point you just made on due diligence, why would it be diligent to make an inquiry in the period of time when the country was not accepting removals for people born in Soviet Armenia? Ms. Schroeder, the due diligence requirement requires a person to exercise reasonable diligence. Here, petitioner had a removal order from 2011. So even if she was stateless, she still had a removal order. And when California Penal Code Section 1473.7 was enacted, there was a lot of publicity before when Governor Brown signed it to allow, to inform aliens that if they had a conviction that would be the only basis for their removal, this statute would basically eliminate that removal risk. And so because of that, any reasonable alien and petitioner's situation who has a removal order and understands that the basis of that removal order could disappear would act at that point. And she didn't. Counsel, you keep using the term reasonable. Why would it be reasonable to have any concerns when your country is not accepting removed citizens or removed persons? It's reasonable because if you have a removal order, ICE can actually remove you to another country or they can also work to work with Armenia to see if they will accept the person. So the fact that you have a removal order is what puts you on notice that you can be removed. Not that you're stateless, but the fact that you have a removal order. So a reasonable person in that situation would exercise some care to figure out how they can avoid that consequence. And when 1473.7 was enacted, aliens were put on notice like, hey, if you have a criminal conviction that is the sole basis of your removal order, you should act now. Are there other examples of former Soviet republics or other places that were not accepting returned citizens? And so the person doesn't take action in a similar circumstance? I do not have. I do not know of certain circumstances of a person being stateless and not acting. However, if we were to look at this court's orders with regard to when a person acts with due diligence after the criminal conviction, after they have a criminal conviction and removal order, you will see that. That they needed to act with with diligence. I mean, I understand under normal circumstances you would, but are there examples of citizens of other former Soviet republics or other countries that were not accepting removals being subject to a similar kind of due diligence analysis? Unfortunately, I do not know of any case law on that point. And so she was coming in every year and they kept saying to her, well, Armenia is not accepting you. So you're fine. See you next year. Is that pretty much what happened? That's what petitioner claimed in her affidavit. And do you have any contrary evidence in the record? We do not have any contrary evidence in the record. So when you say she should have known the people who were in the position to tell her didn't tell her. Well, what she should have done was every year reached out to an attorney to see if there's any reason why her criminal conviction could be vacated. That would eliminate the immigration consequences of that conviction. OK, let's talk about Lazada. Go ahead. Go ahead. Please. Do you want to talk about Lazada? Your Honor, Lazada is not relevant in this case because petitioners. Well, one, the agency did not make a determination with regard to Lazada. It said a lot of things about Lazada about there not being an affidavit, an affidavit from the petitioner and from the council with regard to what action was taken. I know the BIA says there is not any attempt to comply with Lazada. So they did deal with Lazada. Yes, Your Honor. But the yes. So the board did. They also say there is no affidavit filed and there was. The affidavit does not comply with the Lazada requirements. There's a difference between saying no affidavit was ever filed and it was a deficient affidavit. And the board said there's no affidavit file. That wasn't true. That was probably a misstatement. Judge Thomas. Yes. I'm having a little trouble hearing. OK, I'll speak this better. Very good. So. The board said there was no affidavit, but it was clearly talking about Lazada when it said that. But regardless, the board did not make a definitive determination on whether petitioners council rendered an effective assistance. So this case, like I said, hinges on due diligence on whether. So even if petitioners council. Well, it goes on to say we're not persuaded that the record demonstrates a clear and obvious case of ineffective assistance, right? Yes. I mean, they did reach it. Yes, they did, but they found that Lazada that there was no ineffective assistance of counsel in this case. Council, I have a question for you. Did the petitioner submit, if not an affidavit, some kind of declaration? The language in us. Saying that the. Facts alleged are true under. Under penalty of perjury. The petitioner submitted a declaration, but it was not sworn under penalty of perjury. Oh, I'm sorry. I apologize. She did say in the beginning of her declaration that she swears under penalty of perjury. However, nothing in her declaration discusses what she did from the enactment of 1473 until when she met with. With ice in June of 2018. Oh, she did explain what happened. She said she met with the attorney, filed a motion to vacate and was vacated. Right. But there's nothing in there that discusses the time between when 1473.7 was enacted. And the time when she met with ice, that's the first event that she discusses. That's the first time she acted. And in order for her to establish a diligence, she needed to show that she did something from the time that 1473 was enacted. You have a case that says that. No, but I mean, the the famous maxim is germane versus Carlisle, a Supreme Court case that says we have long recognized the common maxim familiar to all minds that ignorance of the law will not excuse any person, either civilly or criminally. So the fact that you're talking about what you're the time from what you measure diligence. So there's no case that supports your position or there's on point, right? Right. Well, you're supposed to. So the difficulty in this is that most cases that have been cited were dealing with ineffective assistance to counsel when there was actually fraud. But here we're talking about counting the time from when there's been a change of the law. And so the change of law here happened on January 1st, 2017. Usually a person gets 90 days to file a motion to reopen. That wasn't done in this case. And with regard to the case cited by petitioners, counsel bent. That is an opposite to this case, because in that case, the both parties agreed to remand. And the tolling period in that case was from December 22nd, 2021, when the board entered its final removal order, administrative order. And. May 17th, 2022, when they filed their motion to vacate. And in that case, this court held that the petitioner had been a fervently defending his removal. As soon as he got his notice to appear, sorry, notice to appear, which puts him into removal proceedings in 2016. Counsel, I'd like to tell you something that troubles me about your argument. And then you can tell me why it shouldn't trouble me. After she learned about the change of law in Armenia, her conviction wasn't at that moment vacated. But I thought she then hired counsel and counsel started to take efforts to get her conviction vacated. Am I right in that? So nothing in her declaration talks about when she learned about the change of law, which is the relevant time period that the agency focused on. Instead, she focused on when she learned that her removal might occur to Armenia. So I think that's the disconnect is the agency considered the diligence time period from January 1st, 2017, when she has the ability to vacate her criminal conviction that would eliminate all removal consequences for her. And in her mind, due diligence starts from the time she met with ice and they told her that removal is possible. So, why isn't that reasonable? That's not reasonable because. Her removal, the consequences of her, her conviction. Was her ability to, I guess, eliminate the consequence of that happened on January 1st. I understand that, but I mean, she's been told every year. Everything's fine. Don't worry. And then when she was told things have changed, then she got an attorney and found out she could challenge her conviction and did. The reason why it's important is because. A reasonable person with the removal order, even assuming that I told her that we're not going to remove you. If they had the chance to nullify the removal order, they should take it. And when did she learn that she had a chance to remove the conviction or challenge the conviction? Well, as soon as you just are in constructive notice, not actual notice, right? Right. And that's on the actual notice part. Didn't she take action as soon as she knew about the potential for removal to Armenia? When she actually had noticed, but that's not required. Well, I know that's the difference. There are actual notice you're in constructive notice. There's no case law on that. I'm not aware of any, Your Honor. But OK, thank you. Any further questions? There's schools. All right. Thank you. Thank you, Your Honors. Thank you. Thank you. In Bent v. Garland, the petitioner was issued an NTA in 2016. He didn't seek a vicature until 2022. The statute was enacted in 2017. This honorable court has determined that it's when you are put on reasonable notice that something is essentially wrong. In petitioner's case, the record is clear. And I did submit proof that she was reporting every year to ICE. She was issued employment authorization. The record is also clear on page 247 of the ROP. The U.S. Department of Justice deemed her stateless from the beginning. We knew she was stateless and they tried to deport. Armenia would not accept her. And she was not only that, but pursuing an education, a career. She became a homeowner. She turned her whole life around. And when she was put on notice that you may be removed, she took action immediately. And like I said, now the risk is even greater. They're deporting people to third countries. So the prejudice to her has drastically improved. And of course, I did submit a declaration with my second motion. I outlined and I took full responsibility for failure to address due diligence. And she also submitted a declaration explaining the due diligence and the fact that she relied on me. I did my absolute very best. And I do hope that the court will see that and grant the petition for review. Any questions? Okay. Thank you for your argument. Thank you for your presentation. The case just argued will be submitted for decision.
judges: THOMAS, GOULD, Morris